UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIM MEADE, | Case No. 1:23-cv-713 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Jonathan D. Greenberg |
| LORAIN COUNTY, | |
| MAGDELENA B. HOPKINS, | |
| and | |
| BRENDA VARADY, | |
| Defendants. | |

## OPINION AND ORDER

Plaintiff Kim Meade worked as an administrative assistant in the Lorain County Engineer's Office. On multiple occasions during her employment, Ms. Meade took leave under the Family and Medical Leave Act to attend to serious medical conditions. After she missed work without providing her supervisors a note, the County terminated Ms. Meade's employment. Plaintiff filed suit against Lorain County and her two supervisors, alleging violations of anti-discrimination and anti-retaliation provisions in federal and State law. Defendants move for judgment on the pleadings under Rule 12(c). For the reasons that follow, the Court **GRANTS IN PART** Defendants' motion for judgment on the pleadings (ECF No. 13) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims arising under State law.

## STATEMENT OF FACTS

On Defendants' motion for judgment on the pleadings, the Court takes the following allegations in the complaint as true and construes them in Plaintiff's favor.

### A. Ms. Meade's Employment with Lorain County

In 2020, the Lorain County Engineer's Office hired Plaintiff Kim Meade as an administrative assistant. (ECF No. 1, ¶¶ 18 & 20, PageID #3.) Defendants Brenda Varady and Magdelina B. Hopkins also worked in the office, and each possessed authority to issue discipline and performance improvement plans. (*Id.*, ¶¶ 24, 26–27, 29 & 31–32, PageID #3–4.)

In both August and December of 2021, Ms. Meade missed roughly one week of work to attend to serious medical conditions. (*Id.*, ¶¶ 34 & 37, PageID #4.) Both times, Ms. Meade applied for and received leave under the Family and Medical Leave Act to cover her time away. (*Id.*, ¶¶ 36 & 39, PageID #4.) Ms. Meade was an "eligible employee" under the FMLA. (*Id.*, ¶ 19, PageID #3.)

Ms. Meade's colleagues complained about how often she missed work. (*Id.*, ¶ 40, PageID #4.) Her supervisors, Ms. Varady and Ms. Hopkins, placed her on a performance improvement plan. (*Id.*, ¶ 42.) Among other things, the plan restricted Ms. Meade from missing work and required her to provide a doctor's note when using sick leave. (*Id.*, ¶¶ 47–48, PageID #5.) The plan imposed restrictions outside the County's general employment policy. (*Id.*, ¶ 49.) Ms. Meade fulfilled all aspects of the plan without incurring a performance complaint, yet Ms. Hopkins and Ms. Varady extended the plan an additional month. (*Id.*, ¶¶ 63–64, 69, PageID #6.)

### B. Ms. Meade's Termination

On or about July 13, 2022, Ms. Meade asked for time off work to take her father to the hospital, an event the FMLA covers. (*Id.*, ¶¶ 70 & 78, PageID #6–7.) Ms. Varady refused to approve this request for time off and failed to notify Ms. Meade that the request qualified for coverage under the FMLA. (*Id.*, ¶¶ 74, 80, PageID #6–7.) Ultimately, the County Engineer himself approved Ms. Meade's request. (*Id.*, ¶ 82, PageID #7.) But when Ms. Meade returned to work, Ms. Hopkins reprimanded her for not providing a doctor's note to excuse her absence, as her performance improvement plan required. (*Id.*, ¶ 89.)

On or about July 21, 2022, Ms. Varady and Ms. Hopkins terminated Ms. Meade's employment due to a review of her performance. (*Id.*, ¶¶ 99–100, PageID #8.) Ms. Meade asserted that her performance had improved under the performance improvement plan and that she had "no performance issues." (*Id.*, ¶¶ 98 & 101.) Ms. Hopkins cited "crooked placement of labels, phone messages not written on carbon copy paper, a jammed stapler, and light ribbon on the time stamp machine" as reasons for her termination. (*Id.*, ¶ 119, PageID #9.)

Ms. Meade initiated a hearing for unemployment assistance. (*Id.*, ¶ 115.) The official presiding over the hearing determined that the County terminated Ms. Meade "without cause." (*Id.*, ¶ 121.) Ms. Meade sent a notice of claims letter to the County, to which the County responded by sending a cease-and-desist letter to Ms. Meade. (*Id.*, ¶¶ 123–124, PageID #10.) Before instituting this action, Ms. Meade filed a charge of discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission. (*Id.*, ¶ 11, PageID #2.)

## STATEMENT OF THE CASE

Based on these allegations, Plaintiff sued Lorain County and her supervisors Magdelena Hopkins and Brenda Varady. (ECF No. 1.) Plaintiff asserts two claims under the Family and Medical Leave Act: interference with the exercise of rights (Count I) and retaliation (Count II). (ECF No. 1, ¶¶ 134–145, PageID #10–11.) Plaintiff asserts one claim of retaliatory discrimination under Title VII of the Civil Rights Act of 1964 (Count IV). (*Id.*, ¶¶ 153–159, PageID #12–13.) Also, she brings two claims under Section 4112 of the Ohio Revised Code: retaliatory discrimination (Count III) and disability discrimination (Count V). (*Id.*, ¶¶ 146–152, 160–172, PageID #12–14.) Plaintiff asserts all five claims against each of the three Defendants.

Defendants move for judgment on the pleadings under Rule 12(c). (ECF No. 13.) They argue that no claims lie against Lorain County because the County is not amendable to suit. (*Id.*, PageID #121.) Defendants first raised this defense in their answer. (ECF No. 7, ¶ 92, PageID #58.) They argue that Plaintiff fails to state a claim under Title VII because she does not allege discrimination based on a protected characteristic. (ECF No. 13, PageID #125.) Finally, Defendants argue that Plaintiff fails to state a claim against the individual defendants under the FMLA or Ohio law. (*Id.*, PageID #121–22, #123-24, #126–27.)

Plaintiff opposes some but not all of Defendants' arguments. (ECF No. 16.) "Plaintiff does not contest that Defendants Hopkins and Varady cannot be sued individually under the FMLA," so those claims are abandoned. (*Id.*, PageID #150.) Also, Plaintiff "agrees that Varady and Hopkins are not" liable under Ohio law for

4

disability discrimination. (*Id.*, PageID #155.) Further, "Plaintiff does not dispute Defendants' arguments in favor of dismissing her Title VII . . . claim." (*Id.*, PageID #154.) Plaintiff abandoned these claims as well. *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023).

After those concessions, Plaintiff's case consists of two FMLA claims against the County (Counts I and II), one disability discrimination claim under Ohio law against the County (Count V), and a retaliation claim under Ohio law against all Defendants (Count III).

## ANALYSIS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings essentially constitutes a delayed motion under Rule 12(b)(6) and is evaluated under the same standard. *See, e.g.*, *Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016). In other words, judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the court concludes that the moving party is entitled to judgment as a matter of law. *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021). In construing the pleadings, the court accepts the factual allegations of the non-movant as true, but not unwarranted inferences or legal conclusions. *Holland*, 656 F. App'x at 236–37 (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

5

On a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)). Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive. *Id.* (quotation and citation omitted). Conversely, "[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575. Nor are facts that are "merely consistent with" liability. *Bates*, 958 F.3d at 480 (quotation omitted).

I. **Federal Claims**

Plaintiff asserts two claims that arise under federal law, both under the FMLA, 29 U.S.C. § 2601, *et seq.* (ECF No. 1, ¶¶ 136 & 141, PageID #11.) Plaintiff claims that Defendants interfered with her rights under the FMLA and retaliated against her for exercising those rights. (*Id.*) Plaintiff abandoned these claims as alleged against the individual Defendants and proceeds on both claims against the County alone. (ECF No. 16.) Arguing that it is not *sui juris*, capable of being sued as a matter of State law, the County seeks a judgment on the pleadings. (ECF No. 13, PageID #121.)

I.A. **Proper Defendant**

The FMLA provides a private right of action to "employees" for "damages and equitable relief" against "[a]ny employer who violates" the Act. 29 U.S.C. §§ 2617(a)(1) & (2). The County contends that it is an improper defendant, which

6

depends, in part, on whether the County is an "employer" within the meaning of the Act.  For purposes of the FMLA, the definition of an "employer" "includes any 'public agency', as defined" in the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*  29 U.S.C. § 2611(4)(A)(iii).  In turn, the FLSA defines a "public agency" as the government of a State or one of its political subdivisions.  It defines a "public agency" as:

> [i] the Government of the United States; [ii] the government of a State or political subdivision thereof; [iii] any agency of the United States (including the United States Postal Service and Postal Regulatory Commission), a State, or a political subdivision of a State; [iv] or any interstate governmental agency.

29 U.S.C. § 203(x).

State law determines a county's relation to its home State.  As relevant here, Rule 17 of the Federal Rules of Civil Procedure, titled "Capacity to Sue or be Sued," determines capacity to sue or be sued "by the law of the state where the court is located," subject to certain exceptions that do not apply.  Fed. R. Civ. P. 17(b)(3).  Lorain County is a "political subdivision[] of [Ohio] that facilitate[s] the state's operations."  *Estate of Fleenor v. Ottawa Cnty.*, 170 Ohio St. 3d 38, 2022-Ohio-3581, 208 N.E.3d 783, ¶ 8 (citing *State ex rel. Alexander v. Summit Cnty.*, 4 Ohio N. P. (n.s.) 481 (Ct. Com. Pl. 1906)).

### I.A.1. "Agency of a Political Subdivision"

Lorain County does not fall within the first or fourth part of the definition of a public agency.  Working in reverse order through the remaining portions of the statutory definition, the third set of agencies included in the definition of a "public agency" applies to "any agency of the United States (including the United States

7

Postal Service and Postal Regulatory Commission), a State, or a political subdivision of a State." 29 U.S.C. § 203(x). To make it more succinct, the statute defines "any agency of . . . a State, or a political subdivision of a State" as a "public agency." *Id.* The phrase "any agency" in this part of the definition distributes to each of the three bodies that follow: "the United States," "a State," and "a political subdivision." The definition separates those three bodies by commas, indicating that they belong to a sub-list, each member of which is modified by the same preceding phrase "any agency." In this way, the text defines as a "public agency" the following: (1) "any agency of the United States"; (2) "any agency of a State"; and (3) "any agency of a political subdivision." Lorain County is a political subdivision—not an agency of the State of Ohio and not an agency of a political subdivision. On a plain reading of the statutory text, Lorain County is not a "public agency" within the meaning of the FLSA or, by cross-reference, the FMLA.

### I.A.2. "The Government of a Political Subdivision"

Therefore, the County's status as an employer under the FLSA, and by extension the FMLA, turns on the second clause set off by semi-colons in the statutory definition of a "public agency." This part of the statute defines "the government of a State or political subdivision thereof" as a "public agency." *Id.* The Court reads the words "the government of a" in the definition to distribute to both "State" and "political subdivision." This reading accounts for the use of the indefinite article "a" before "State" but not before "political subdivision"—because the phrase "the government of a" modifies both "State" and "political subdivision." Also, this interpretation parallels that of "any agency" in the next part of the definition (part

8

[iii]). In other words, the statute defines "the government of a State" and "the government of a . . . political division of a State" as public agencies.

Reading this portion of the definition to apply to "a political subdivision" would require adding a word to the statute or applying an ellipsis in an unnatural way to alter the text. That is, the statutory definition ("the government of a State or political subdivision thereof") would have to mean either "the government of a State or [a] political subdivision"—adding a word—or ". . . a . . . political subdivision"—disregarding "the government of." Either option violates the basic rules of grammar and statutory interpretation. Also, it would ignore the overall structure and purpose of the statutory definition of a "public agency" under the FLSA. That definition applies to the *government* of the United States and the *government* of a State—not the United States itself or a State itself. Each clause of the definition applies to a *government* or an *agency*. This structure reinforces the plain reading of the statute's text, which does not permit treating "a political subdivision" as a public agency.

If Congress intended to include the County in the definition of a "public agency," it could easily have done so. It knows how. Indeed, it has. In another civil rights statute, Title VII of the Civil Rights Act of 1964, Congress expansively defined those subject to suit. Under Title VII, persons who may be sued include, among others, "individuals, governments, governmental agencies, political subdivisions." 42 U.S.C. § 2000e(a). In contrast, the FLSA uses meaningfully different and narrower language. *See* 29 U.S.C. § 203(x); *see also id.* §§ 203(e)(2)(C) & (e)(4).

9

Under the FLSA's definition of a "public agency," the County is not "the government of a State." 29 U.S.C. § 2611(4)(A)(iii) (incorporating 29 U.S.C. § 203(x)). Indeed, Ohio law makes clear that the County is a political subdivision, not the State itself. *See Estate of Fleenor*, 2022-Ohio-3581, at ¶ 8. Moreover, Eleventh Amendment jurisprudence teaches that political subdivisions of a State are not the State itself. *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 443 (6th Cir. 2020).

Nor is Lorain County "the government of a . . . political subdivision" of a State. 29 U.S.C. § 2611(4)(A)(iii) (incorporating 29 U.S.C. § 203(x)). Under Oho law, the government of a county (in most counties, including Lorain County) is the board of county commissioners. Ohio Rev. Code §§ 302.12 & 302.13; *see also* Ohio Rev. Code Chapter 305; *Estate of Fleenor*, 2022-Ohio-3581, at ¶ 8; *Geauga Cnty. Bd. of Commrs. v. Munn Rd. Sand & Gravel*, 67 Ohio St. 3d 579, 582, 621 N.E.2d 696 (1993).

For these reasons, the FMLA does not confer a right to sue Lorain County as a political subdivision of a State.

### I.A.3. *Sui Juris*

Defendants advance a version of this argument. They argue that unchartered counties, such as Lorain County, are not amenable to suit in Ohio. (ECF No. 13, PageID #121.) In Ohio law, the term for this concept is "*sui juris*"—Latin for "of one's own right." In legal usage, *sui juris* "means 'possessing full capacity and rights to sue or be sued.'" *Estate of* Fleenor, 2022-Ohio-3581, at at ¶ 3 n.1 (quoting *Mollette v. Portsmouth City Council*, 169 Ohio App. 3d 557, 2006-Ohio-6289, 863 N.E.2d 1092, ¶ 1 (Ohio Ct. App.)). Each county's "board of county commissioners may sue and be

10

sued, and plead and be impleaded, in any court." Ohio Rev. Code § 305.12. But a county itself may not sue or be sued, *Estate of Fleenor*, 2022-Ohio-3581, at ¶ 13, unless that county has "adopt[ed] a charter or an alternative form of government," Ohio Rev. Code § 301.22. (Lorain County has not done so.) Therefore, Lorain County is "not a juridical entity subject to suit under Ohio law." *Tysinger v. Police Dep't.*, 463 F.3d 569, 572 (6th Cir. 2006).

Under Ohio law, counties "may exercise only those powers affirmatively granted by the General Assembly." *Munn Rd. Sand & Gravel*, 67 Ohio St. 3d at 582; *see Stone v. Holzberger*, 807 F. Supp. 1325, 1333 (S.D. Ohio 1992), *aff'd*, 23 F.3d 408 (6th Cir. 1994) (holding that, absent specific statutory authorization, a county lacked capacity to sue or be sued and that the county commissioners were the proper defendants). Ohio counties are not the government of a political subdivision of the State—they are governed by and exercise power through an elected board of county commissioners (unless a charter provides otherwise). *Munn Rd. Sand & Gravel*, 67 Ohio St. 3d at 583. To hale the County into court, Plaintiff must sue "the government of" the County, 29 U.S.C. § 203(x), which is the board of county commissioners, Ohio Rev. Code § 305.12.

### I.A.4. Amendment

As a final procedural matter, the Court will not grant Plaintiff leave to amend her pleadings to name a new defendant. *Cf. Estate of Fleenor*, 2022-Ohio-3581, at ¶ 13. The Court set August 21, 2023 as the deadline to amend pleadings or add parties. (ECF No. 14, PageID #130.) Defendants moved for judgment on the pleadings in July 2023, more than six weeks before that deadline. (ECF No. 13.)

11

Moreover, Defendants put Plaintiff on notice of this defense in May, when their answer asserted a defense that Lorain County "is not *sui juris* and is incapable of being sued under Ohio law." (ECF No. 7, ¶ 92, PageID #58.) Rather than seek leave to add a different or additional party by the deadline, Plaintiff chose to stand on the complaint as drafted. As a consequence, it is now too late to name new defendants.

### I.B. Plaintiff's Arguments

Plaintiff responds that the relevant issue is not whether the County has *capacity* to be sued but whether it is *immune* from suit. (ECF No. 16, PageID #151.) But for purposes of federal law the County may not be sued because it is not an "employer" against whom Plaintiff has a right of action under the FMLA. 29 U.S.C. §§ 2617(a)(1) & (2). And the express inclusion of entities other than the County which Plaintiff may sue (for example, the board of county commissioners) implies the exclusion of the County. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) (negative-implication canon).

As for State law, the Ohio Supreme Court recently recognized that "suability and liability are not interchangeable concepts." *Estate of Fleenor*, 2022-Ohio-3581, at ¶ 12. *Sui juris* relates to "suability"—whether the County is a juridical person capable of being sued. *Id.* As the Ohio Supreme Court explained, "political-subdivision tort liability and immunity" under Chapter 2744 of the Ohio Revised Code stand in contrast to "suability." *Id.* In doing so, the Court reversed a State appellate decision that conflated the limitation on the immunity from tort liability of a political subdivision with its amenability to suit. *Id.*

Plaintiff relies heavily on *Smith v. Grady*, 960 F. Supp. 2d. 735 (S.D. Ohio 2013). There, the plaintiff brought similar claims under the FMLA and Ohio law against Hamilton County and other entities and individuals. Like Defendants here, the County raised its inability to be sued using the *sui juris* defense. *Id.* at 740. The court treated "the issue [as] one of immunity from suit rather than one of capacity to be sued." *Id.* Since then, however, the Ohio Supreme Court rejected that view in *Estate of Fleenor*, 2022-Ohio-3581, at ¶ 12.

Regarding the FMLA specifically, the *Smith* Court read the Act's definition of "employer" to "to include the government of a State or a political subdivision thereof, a State, or a political subdivision of a State." 960 F. Supp. 2d at 743 (citing 29 U.S.C. § 203(x)); *see also* 29 C.F.R. § 825.108(c)(1). Respectfully, the Court disagrees with *Smith*'s conclusion that the applicable statutes "subject a 'political subdivision,' such as a county, to suit." *Id.* From there, the *Smith* Court proceeded to discuss immunity under the Eleventh Amendment, *Smith*, 960 F. Supp. 2d at 743, a distinct issue which Defendants here have not raised.

Plaintiff does not cite other authority for the proposition that the County is a proper defendant. Based on its independent research, *Smith* appears to be one of the leading cases supporting Plaintiff's position. Other cases allow a plaintiff to bring suit against an Ohio county under Section 1983. *See, e.g., Stack v. Karnes*, 750 F. Supp. 2d 892, 896 (S.D. Ohio 2010) (citing 42 U.S.C. § 1983). However, the analysis there cuts against Plaintiff here because, aside from State law, "as a matter of federal law, [the Ohio county was] without grounds to assert immunity from a *Monell*-based

13

§ 1983 claim." *Id.* at 897 (citing *Lowe v. Hamilton Cnty. Dep't of Job & Family Servs.*, 610 F.3d 321, 330 (6th Cir. 2010)). And Section 1983 differs in material respects from the FMLA. In many other cases, county defendants forfeited the argument made here, and qualification as an "employer" under the FMLA is "not jurisdictional in nature" such that a court must reach the issue in any event. *Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 550 (6th Cir. 2006).

In summary, *Smith v. Grady* provides a thoughtful analysis of the complex interplay between a federal cause of action and a State-law defense. Based on a plain reading of the text of the federal statutes, and the Ohio Supreme Court's recent analysis in *Estate of Fleenor*, the Court reaches a different conclusion than *Smith*. In the end, *Smith* does not alter the Court's view that the FMLA provides Plaintiff no right of action against the County directly.

## II.     State-Law Claims

Plaintiff brings additional causes of action under State law for retaliatory discrimination and disability discrimination, Ohio Rev. Code §§ 4112.02(A) & (I). (ECF No. 1, ¶¶ 150 & 166, PageID #12 & #13.) But the Court need not address those claims. Instead, the Court "may decline to exercise supplemental jurisdiction over a claim" where, as here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because Defendants are entitled to judgment on the pleadings on Plaintiff's claims arising under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims arising exclusively under State law. Ordinarily, it is improper for a federal court to decide such claims, *Rouster v. County of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014) (citation omitted), and "there

is a strong presumption in favor of dismissing" them, *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 538–39 (6th Cir. 2010). No circumstances present here rebut that presumption. Notions of comity and federalism dictate that an Ohio court is better suited to decide those claims, which no longer provide a basis for federal jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

## CONCLUSION

For all the foregoing reasons, the Court **GRANTS IN PART** Defendants' motion for judgment on the pleadings. (ECF No. 13.) Specifically, the Court **GRANTS** judgment on the pleadings in favor of Defendants on Plaintiff's claims arising under federal law asserted in Counts I and II. Further, the Court **DISMISES** Count IV and **DISMISSES WITHOUT PREJUDICE** the State-law claims that Plaintiff asserts in Counts III and V.

**SO ORDERED.**

Dated: December 15, 2023

J. Philip Calabrese
United States District Judge
Northern District of Ohio

15